**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: June 30, 2009**

J. Vincent Aug, Jr.
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **In re:**<br><br>**MILACRON INC.,**<br><br>**a Delaware corporation, et al.**    **1**<br><br>**Debtors.** | **Chapter 11**<br><br>**Case Nos. 09-11235 through 09-11239,**<br>      **09-11241, and 09-11244**<br><br>**Jointly Administered (09-11235)**<br><br>**Honorable J. Vincent Aug, Jr.** |

**ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365 AND RULES 2002, 6004, 6006 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (A) APPROVING THE PURCHASE AGREEMENT; AND (B) AUTHORIZING (I) THE SALE OF**

---

1     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Milacron Inc. (2125); Cimcool Industrial Products Inc. (1002); Milacron Marketing Company (0580); Milacron Plastics Technologies Group Inc. (1007); D-M-E Company (3086); Milacron Canada Ltd. (7230); and Milacron Capital Holdings B.V. (7203). The corporate headquarters address of these Debtors is: 4165 Half Acre Road, Batavia, Ohio 45103. As a result of an organizational restructuring during the fourth quarter of 2008, the following entities have been merged or consolidated as follows: Nickerson Machinery Chicago Inc. (IL), Northern Supply Company, Inc. (MN), Pliers International Inc. (DE), D-M-E Manufacturing Inc. (DE), D-M-EU.S.A. Inc. (MI) have each consolidated into D-M-E Company (DE); Oak International, Inc. (MI) and Milacron Industrial Products, Inc. (MI) were each consolidated into Cimcool Industrial Products Inc. (DE); Uniloy Milacron U.S.A. Inc. (MI) merged into Milacron Plastics Technologies Group Inc. (DE); Milacron International Marketing Company (DE) and Uniloy Milacron Inc. (DE) each merged into Milacron Marketing Company (OH); and D-M-E of Milacron Canada Limited., 450500 Ontario Limited (Canada), Ontario Heater & Supply Company 528650, Rite-Tek 2913607, and Progress Precision Inc. were each amalgamated with Milacron Canada Ltd. as the surviving entity.

## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND THE PARENTS TOCK FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACT SAND UNEXPIRED LEASES

This matter having come before the Court on the motion filed by Milacron Inc. and the other debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), dated April 24, 2009 (the "Motion"),[2] along with the supplement to the Motion, dated May 4, 2009, requesting entry of this Order: (a) approving the Purchase Agreement, dated as of May 3, 2009 (as amended June 5, 2009 and June 25, 2009, and as may be further amended, modified or supplemented in accordance with the terms hereof and thereof, the "Purchase Agreement"), by and among the Debtors and MI 363 Bid LLC (the "Purchaser"), and all instruments and documents related thereto (collectively, the "Purchase Agreement Documents"); and (b) authorizing (i) the sale (the "Sale") of substantially all assets of the Debtors and (ii) the assumption and assignment or rejection by the Debtors of certain executory contracts and unexpired leases (the "Assumed or Rejected Contracts and Leases"), in each case, pursuant to and as described in the Purchase Agreement Documents; and the Court having entered an order (the "Bid Procedures Order") (Doc. No. 402): (a) approving (i) the Bid Procedures, (ii) the form and manner of notice of the Sale, (iii) the form and manner of the notice of the assumption and assignment or rejection of Assumed or Rejected Contracts and Leases and (iv) the Bid Protection Amount; and (b) scheduling a sale hearing; and the Court having reviewed the Motion and it appearing that notice of the Motion was good and sufficient under the circumstances and that no other or further notice need be given; and the Court having considered the arguments of counsel at the hearing held on June 26, 2009 (the "Sale Hearing"); and it

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Motion, the Purchase Agreement (as defined herein) or the Bid Procedures (as defined herein), as applicable.

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

estates and creditors and other parties in interest; and upon the record of the Sale Hearing; and

upon consideration of all pleadings filed with the Court; and after due deliberation hereon; and

good cause appearing therefor at which time all interested parties were offered an opportunity to

be heard with respect to the Motion; and the Court having reviewed and considered (a) the

Motion, (b) all objections thereto (collectively, the "Objections"), (c) the arguments of counsel

made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estate and creditors and other

parties in interest; and upon the record of the Sale Hearing and the Cases; and after due

deliberation thereon; and good cause appearing therefor,

IT IS HEREBY FOUND THAT:   [3]

A.    On March 10, 2009, each of the Debtors filed a voluntary petition in the

Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtors continue to operate their business and manage their properties as debtors in

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. An official committee

of unsecured creditors (the "Creditors' Committee") was appointed on March 16, 2009.

B.    The Court has jurisdiction over this matter and over the property of the

Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

C.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D.    Venue of the Cases and the Motion in this district is proper under 28

U.S.C. §§ 1408 and 1409.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

E.      As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing: (i) proper, timely, adequate and sufficient notice of the Motion, the Sale process, the Auction (if any), the Sale Hearing, the Sale and the assumption and assignment or rejection of the Assumed or Rejected Contracts and Leases has been provided in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and in compliance with the Bid Procedures Order; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the Sale process, the Auction (if any), the Sale Hearing, the Sale, or the assumption and assignment or rejection of the Assumed or Rejected Contracts and Leases is or shall be required.

F.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Purchased Assets and have conducted the Sale process in compliance with the Bid Procedures Order, and the Sale process was duly noticed and conducted in a non-collusive, fair and good faith manner.

G.      The Bid Procedures were substantively and procedurally fair to all parties, and were the result of good faith, arm's-length negotiations amongst the Debtors, the Purchaser and the Sponsors. The Bid Procedures allowed bidders to make bids for some or all of the Debtors' assets.

H.      Each Debtor (i) has full corporate power and authority to (x) execute the Purchase Agreement Documents and (y) consummate the transactions contemplated by the Purchase Agreement Documents (the "Transactions") and (ii) has taken all corporate action

4

necessary to authorize and approve the Purchase Agreement Documents and the Transac    tions (including, without limitation, the Sale), and no consents or approvals, other than those expre    ssly provided for in the Purchase Agreement Documents, are required in connection therew    ith.

I.      Approval of the Purchase Agreement Documents and consummation of the Transactions (including, without limitation, the Sale) at this time is in the      best interests of the Debtors, their creditors, their estates, and other parties in interest.

J.      The Debtors have demonstrated (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the Sale pursua    nt to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the Sale the value of the Purchased Assets and the Busines      s will be harmed irreparably.

K.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and e      ntities, including: (i) the Office of the United States Trustee for the Southern District of      Ohio, Western Division; (ii) counsel for the Purchaser and the Sponsors; (iii) counsel for the Creditors'      Committee; (iv) all entities known to have expressed an interest in a transaction with respect to the      Purchased Assets as of the date of service of the Sale Notice; (v) all entities known to have ass      erted any Interests (as defined below) in or upon the Purchased Assets (other than the Purchaser); (vi)      all federal, state, and local regulatory or taxing authorities or recording offices w      hich have a reasonably known interest in the relief requested by the Motion; (vii) all non-Debtor partie      s to Assume or Rejected Contracts and Leases; (viii) the United States Attorney's offi      ce; (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) the Pension Bene      fit Guaranty Corporation; (xii) the Indenture Trustee; and (xiii) all parties on the Speci      al Notice List

establishedintheCasespursuanttotheAdministrativeOrderEstablishingCer       tainSpecial

Notice,SchedulingandCaseManagementProceduresPursuanttoRules2002and9007ofthe

BankruptcyRules(DocketNo.54).

L.      ThePurchaseAgreementDocumentswerenegotiated,proposedand

enteredintobytheDebtors,thePurchaserandtheSponsors,asapplicable,withoutcollus       ion,in

goodfaith,andfromarm's-lengthbargainingpositions.NoneoftheDebtors,thePurchaser       or

theSponsorshasengagedinanyconductthatwouldcauseorpermitanyofthePurchas       e

AgreementDocumentsto   beavoidedundersection363(n)oftheBankruptcyCode.

M.      ThePurchaserandtheSponsorsare"good       faith"purchasersundersection

363(m)oftheBankruptcyCodeand,assuch,areentitledto       alloftheprotectionsafforded

thereby.

N.      ThePurchaserisnotan"insider"ofanyoftheDebtors,asthattermis

definedinsection101(31)oftheBankruptcyCode.

O.      TheconsiderationprovidedbythePurchaserforthePurchasedAssets

pursuanttothePurchaseAgreementDocuments(i)isfairandreasonable,(ii)is       thehighestand

bestofferforthePurchasedAssets,(iii)willprovideagreaterrecove       ryfortheDebtors'creditors

thanwouldbeprovidedbyanyotherpracticalavailablealternativeand(iv)const       itutes

reasonablyequivalentvalueandfairconsiderationundertheBankruptcyCodeandunderthe

lawsoftheUnitedStatesandanystate,territory,possession,ortheDistric       tofColumbia.

P.      TheSalemustbeapprovedandconsummatedpromptlyinorderto

preservetheviabilityoftheBusinessasagoingconcern.

Q.      ThetransferofthePurchasedAssetsandParentStocktothePurchaser

willbealegal,valid,andeffectivetransferofthePurchasedAssetsandP       arentStock,and,except

as otherwise provided in the Purchase Agreement Documents, will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets and Parent Stock free and clear of all Interests, including, but not limited to (A) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets or Parent Stock, or any similar rights, (B) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the Closing Date and (C) (i) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (ii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability to the maximum extent permitted by law (collectively, "Interests").

      R.     The Purchaser would not have entered into the Purchase Agreement Documents and would not consummate the Transactions, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale to the Purchaser is not free and clear of all Interests of any kind or nature whatsoever (except as otherwise provided in the Purchase Agreement

Documents), or if the Purchaser would, or in the future could, be liable for any of the Int erests (except as otherwise provided in the Purchase Agreement Documents).

S.      Except as otherwise provided in the Purchase Agreement Documents, the Debtors may sell the Purchased Assets and convey the Parent Stock free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards se t forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Holders of Inter ests and non-Debtor parties to Assumed Contracts and Leases (each, a "Section 363 Interest edParty ") who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented to the terms of this Order pursuant to section 363(f)(2) of the Bankruptcy Code .All Section 363 Interested Parties who did object to the Sale or the Motion fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately pr otected by having their Interests, if any, attach to the proceeds of the Sale ultimatel y attributable to the property against or in which they claim an Interest.

T.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts and Leases to the Purc haser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts and Leases is in the best interests of the Debtors, their es tates, and their creditors. The Assumed Contracts and Leases being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser and, accordingly, suc h assumption and assignment of Assumed Contracts and Leases is reasonable, enhanc es the value of the Debtors' estates, and does not constitute unfair discrimination.

U.      The Debtors have demonstrated that it is an exercise of their sound business judgment to reject the Rejected Contracts and Leases in connection wit h the

consummation of the Sale, and the rejection of the Rejected Contracts and Leases is in the best interests of the Debtors, their estates, and their creditors.

V.      The Debtors have (i) cured (or caused to be cured), or have provided (or caused to be provided) adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts and Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided (or caused to be provided) compensation or adequate assurance of compensation to any non-Debtor counterparty to any of the Assumed Contracts and Leases for any actual pecuniary loss to such counterparty resulting from a default prior to the date hereof under such Assumed Contracts and Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of its future performance of and under the Assumed Contracts and Leases, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

W.      There was no evidence of insider influence or improper conduct by the Purchaser or any of its affiliates (collectively, the "Purchaser Group") in connection with the negotiation of the Purchase Agreement Documents with the Debtors. There also was no evidence of fraud or collusion amongst the Purchaser Group and any other bidders for the Debtors' assets, or collusion between the Debtors and the Purchaser Group to the detriment of any other bidders.

X.      Approval of the Purchase Agreement Documents and assumption and assignment of the Assumed Contracts and Leases and consummation of the Sale is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

Y.      The Debtors did not receive any Qualified Bid(s) (other than the Stalking Horse Bid) prior to the Initial Bid Deadline, and pursuant to the Bid Procedures Order, the Sale Hearing was held on June 26, 2009.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      General Provisions. The Motion is granted as set forth in this Order. Except as otherwise set forth in Paragraphs 2 and 3 below, all Objections that have not previously been withdrawn are hereby overruled.

2.      The objection of EMI Corp. ("EMI") is hereby sustained based upon the record established that no such contract exists between EMI and any of the Debtors. With respect to the Objections filed by Rex Materials, Inc, ("Rex"), Verizon Business Global LLC ("Verizon Business"), Johnson Electric Supply Company ("Johnson"), Oracle USA, Inc. as successor in interest to Oracle Corporation, PeopleSoft, USA, Inc. and J.D. Edwards (collectively, "Oracle"), and QAD Inc. ("QAD"), each of said objections were resolved substantially as follows:

A.      Rex - Payment of an aggregate cure amount of $252,104.20 within seven (7) Business Days of the Closing Date as total cure amount for assumption and assignment of: (i) Distributor Agreement between Milacron Marketing Company and Rex dated as of April 14, 2008, (ii) Transition Agreement between Milacron Marketing Company and Rex dated as of April 14, 2008, and (iii) Mutual Non-Disclosure Agreement between Milacron Marketing Company and Rex dated as of February 21, 2008. Distributorship Agreement to be amended to reflect terms agreed upon by Debtors and Rex prior to assumption and assignment.

B.      Verizon Business - Payment of an aggregate cure amount of $70,000 within seven (7) Business Days of the Closing Date as total cure amount for all of the Debtors' contracts/accounts with Verizon Business.

C.      Johnson - Payment of an aggregate cure amount of $42,860.52 within seven (7) Business Days of the Closing Date as total cure amount for the

assumption and assignment of the Inventory Consignment Agreement between Debtors and Johnson.

D.  <u>Oracle</u> - Payment of an aggregate cure amount of $228,113.46 within seven (7) Business Days of the Closing Date as total cure amount for the License & Services Agreement and related agreements between Debtors and Oracle, with a dollar-for-dollar reduction of the foregoing amount on account of post-petition payments made by the Debtors to Oracle between the date of the Sale Hearing and the Closing Date.

E.  <u>QAD</u> - Payment of a transfer fee in the amount of $29,277.50 within seven (7) Business Days of the Closing Date as total cure amount for assumption and assignment of Debtors' current Software License Agreement originally between Uniloy Milacron and QAD dated as of February 1, 2001 and all exhibits thereto. Purchaser to execute new license agreement with QAD on mutually agreeable terms.

3.  Notwithstanding anything in this Order to the contrary, nothing in this Order shall release or impair, in any way, the liens and claims that the Pension Benefit Guaranty Corporation ("PBGC") asserts against the Debtors' non-debtor subsidiaries that are members of the Milacron Controlled Group [4] prior to Closing, to the extent such liens or claims are enforceable under applicable law.

4.  Notwithstanding anything in this Order to the contrary (including Paragraph Q above), nothing in this Order shall affect the rights of Mahendra N. Patel and Patel family and associates under Indian law.

5.  <u>Approval of the Purchase Agreement Documents</u>. The Purchase Agreement Documents, and all of the terms and conditions thereof, are hereby approved. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to (a) execute and deliver the Purchase Agreement Documents and (b) consummate the Transactions (including, without limitation, the Sale), in each case, pursuant to and in accordance

---

[4]  "<u>Milacron Controlled Group</u>" shall have the meaning ascribed to it in PBGC's Notice of Liens and Claims against Non-Bankruptcy Milacron Subsidiaries and Statement Regarding Milacron's Proposed Sale of Assets [Doc. No. 522].

withthetermsandconditionsofthePurchaseAgreementDocuments,andtotakeallfurther

actionsasmayberequestedbythePurchaserforthepurposeofassigning,tra          nsferring,granting,

conveyingandconferringtothePurchaserorreducingtopossession,thePurchasedA          ssetsand

theParentStock.

6.      Transfer of Assets  .Pursuanttosections105(a)and363(f)ofthe

BankruptcyCode:(a)thePurchasedAssetsandParentStockshallbetransferre          dtothe

Purchaser;(b)thePurchasershallbevestedwithallright,title,andinter          estoftheDebtorsinand

tothePurchasedAssetsandParentStock;and(c)exceptasotherwiseprovidedinthe          Purchase

AgreementDocuments,upontheconsummationoftheTransactions(the"Closin g_____"),the

PurchasedAssetsandParentStockshallbefreeandclearofallInterests          ofanykindornature

whatsoeverwithallsuchIntereststoattachtothenetproceedsoftheSaleinthe          orderoftheir

priority,withthesamevalidity,forceandeffectwhichtheynowhaveasagai          nstthePurchased

AssetsandParentStock,subjecttoanyclaimsanddefensestheDebtorsmay          possesswith

respectthereto.

7.      Exceptasexpresslypermittedorotherwisespecificallyprovidedbythe

PurchaseAgreementDocumentsorthisOrder,followingClosing,allpersonsandenti          ties,

including,butnotlimitedto,alldebtsecurityholders,equitysecurityholders,governm          ental,tax,

andregulatoryauthorities,lenders,tradeandothercreditors,holdingInterest          sofanykindor

naturewhatsoeveragainstorintheDebtors,thePurchasedAssetsortheParent          Stock(whether

legalorequitable,securedorunsecured,maturedorunmatured,contingentornon-contingent          ,

seniororsubordinated),arisingunderoroutof,inconnectionwith,orinanywayrelating          to,the

Debtors,thePurchasedAssets,theParentStock,theoperationoftheBusinesspriort          othe

ClosingDate,orthetransferofthePurchasedAssetsorParentStocktothePurc          haser,herebyare

foreverbarred,estopped,andpermanentlyenjoinedfromassertingagainstthePur        chaser,its

successorsorassigns,itsproperty,thePurchasedAssets,ortheParentSt        ock,suchpersons'or

entities'Interests.

8.      ThisOrder(a)isandshallbeeffectiveasadeterminationthat(exceptas

otherwiseprovidedinthePurchaseAgreementDocuments),uponClosing,allInterest        sinthe

PurchasedAssetsorParentStockheldbyanypersonotherthanthePurchaserhavebe        enand

herebyareadjudgedanddeclaredtobeunconditionallyreleased,dischargedandtermina        tedand

(b)isandshallbebindinguponandgoverntheactsofallentities,including,allfilin        gagents,

filingofficers,titleagents,titlecompanies,recordersofmortgages,r        ecordersofdeeds,registrars

ofdeeds,administrativeagenciesorunits,governmentaldepartmentsorunits,se        cretariesof

state,federal,stateandlocalofficialsandallotherpersonsandentitiesw        homayberequiredby

operationoflaw,thedutiesoftheiroffice,orcontract,toaccept,file,registe        rorotherwiserecord

orreleaseanydocumentsorinstruments,orwhomayberequiredtoreportorinsurea        nytitleor

stateoftitleinortoanyofthePurchasedAssetsandtheParentStock.UpontheClos        ing,all

personsandentitiesdescribedaboveinParagraph5(b)areauthorizedanddirectedtost        rikeall

evidenceofInterestsinthePurchasedAssetsandtheParentStockheldbyan        ypersonotherthan

thePurchaserimmediatelypriortotheClosing(excepttotheextentsuchI        nterestsareexpressly

assumedbythePurchaserunderthePurchaseAgreementDocuments)fromtheirrec        ords,official

orotherwise.

9.      ExceptwithrespecttoIntereststhatwillbeassumedbythePurchaser

underthePurchaseAgreementDocuments,ifanypersonorentity(otherthanthePurc        haser)that

hasfiledfinancingstatements,mortgages,mechanic'sliens,lispendens,orothe        rdocumentsor

agreementsevidencingInterestsintheDebtors,thePurchasedAssetsortheP        arentStockshall

nothave  deliveredtotheDebtorspriortotheClosingDate,inproperformforfilingand

executedbytheappropriateparties,terminationstatements,instrumentsof    satisfactionor

releasesofsuchInterests,then(a)theDebtorsareherebyauthorize    danddirectedtoexecuteand

filesuchstatements,instrumentsorreleases(orotherrelateddocuments)onbe    halfofsuch

personorentityand(b)thePurchaserisherebyauthorizedtofile,registeror    otherwiserecorda

certifiedcopyofthisOrder,which,oncefiled,registeredorotherwiserecorde    d,shallconstitute

conclusiveevidenceofthereleaseofallsuchInterests.

　　　　　10.    NothinginthisOrderoranyagreemententeredintounderthisOrder

releases,nullifies,precludes,orenjoinstheenforcementofanyliabilityt    oagovernmentalunit

underpoliceorregulatorystatutesorregulationsthatanyentitywouldbesubj    ecttoastheowner

oroperatorofpropertyafterthedateofentryofthisOrder.

　　　　　11.    AssumptionandAssignmenttoPurchaserofAssumedContractsand

Leases.Pursuanttosections105(a)and365oftheBankruptcyCode,andsubjecttoand

conditionedupontheClosingoftheSale,theDebtors'assumptionandassignmenttothe

Purchaser,andthePurchaser'sassumptiononthetermssetforthinthePurchaseA    greement

Documents,oftheAssumedContractsandLeasesisherebyapproved,andtherequirem    entsof

section365(b)(1)oftheBankruptcyCodewithrespecttheretoareherebydeeme    dsatisfied.

　　　　　12.    TheDebtorsareherebyauthorizedanddirectedinaccordancewith

sections105(a)and365oftheBankruptcyCodeandthePurchaseAgreementto(a)assume    and

assigntothePurchaser,effectiveupontheClosing,theAssumedContractsandLe    asesand

(b)executeanddelivertothePurchasersuchdocumentsorotherinstrumentsasma    ybe

necessarytoassignandtransfertheAssumedContractsandLeasestothePurc    haser.

14

13.    WithrespecttotheAssumedContractsandLeases:(a)suchcontractsand leasesshallbetransferredandassignedto,andfollowingtheclosingoftheSal e,shallremainin fullforceandeffectforthebenefitof,thePurchaserinaccordancewiththei rrespectiveterms, notwithstandinganyprovisioninanysuchcontractsandleases(includingthoseofth etype describedinsections365(b)(2)and(f)oftheBankruptcyCode)thatprohibits,restr icts,or conditionssuchassignmentortransferand,pursuanttosection365(k)oftheBankruptcyCode , theDebtorsshallberelievedfromanyfurtherliabilitywithrespecttosuc hcontractsandleases aftersuchassignmenttoandassumptionbythePurchaser;(b)eachsuchcontract orleaseisan executorycontractoftheDebtorsundersection365oftheBankruptcyCode;(c)the Debtors mayassumeeachsuchcontractorleaseinaccordancewithsection365oftheBank ruptcyCode; (d)theDebtorsmayassigneachsuchcontractorleaseinaccordancewithse ctions363and365 oftheBankruptcyCode,andanyprovisionsinanysuchcontractorleasethatprohibitor conditiontheassignmentofsuchcontractorleaseorallowthepartytosuchcontract orleaseto terminate,recapture,imposeanypenalty,conditionrenewalorextension,ormodify anytermor conditionupontheassignmentofsuchcontractorlease,constituteunenforceableanti- assignmentprovisionswhicharevoidandofnoforceandeffect;(e)allotherrequirem entsand conditionsundersections363and365oftheBankruptcyCodefortheassumptionbythe Debtorsand  assignmenttothePurchaserofeachsuchcontractorleasehavebeensatisfied; and (f)uponClosing,inaccordancewithsections363and365oftheBankruptcyCode,the Purchasershallbefullyandirrevocablyvestedinallright,titleandinter estinandtoeachsuch contractorlease.AnyportionsoftheAssumedContractsandLeasespertaining toLeasedReal Propertythatpurporttopermitlandlordstocanceltheremainingtermofany suchAssumed ContractsandLeasesiftheDebtorsdiscontinuetheiruseoroperationoftheLeas edReal

Property are void and of no force and effect, and shall not been enforceable against the P        urchaser,
its assignees and sublessees, and the landlords under such Assumed Contracts and Lea        ses shall
have no right to: (a) cancel or otherwise modify such Assumed Contracts and Lease        s,
(b) increase the rent, (c) assert any claim or (d) impose any penalty; whe        ther by reason of
(i) such discontinuation, (ii) the Debtors' cessation of operations, (iii) the assi        gnment of the
Assumed Contracts and Leases to the Purchaser or (iv) the interruption of busines        s activities at
any of the premises leased thereunder.

14.     Upon the Closing (or at such other time as provided in the Purchase
Agreement Documents), the Purchaser shall assume and agree to pay, perform a        nd otherwise
discharge the Assumed Liabilities pursuant to Section 2.02 of the Purchase Agreem        ent, with
such assumption of liabilities constituting a portion of the purchase price paid by the        Purchaser
for the Purchased Assets.

15.     The Purchaser is hereby authorized in connection with the consummation
of the Sale to allocate the Purchased Assets and the Assumed Contracts and Le        ases among its
affiliates, designees, assignees and/or successors in a manner as it in it        s sole discretion deems
appropriate, and to assign, sublease, sublicense, transfer or otherwise dispose of an        y of the
Purchased Assets or the rights under any Assumed Contract or Lease to it sa        ffiliates, designees,
assignees and/or successors with all of the rights and protections accorded under        this Order and
the Purchase Agreement Documents, and the Debtors shall cooperate with and take all ac        tions
reasonably requested by the Purchaser to effectuate any of the foregoing. To the        extent any
Avoidance Actions (as hereinafter defined) are allocated to an affiliat        e, designee, assignee and/or
successor of or to the Purchaser, such affiliate, designee, assignee, or succe        ssor shall be bound

16

by the Purchaser's obligations under paragraphs 20-22 of this Order and paragraph 28 of the Final DIP Order.

16.    All defaults or other obligations of the Debtors under the Assumed Contracts and Leases arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured (or caused to be cured) by the Debtors at the Closing or as soon thereafter as is practicable, and the Purchaser shall have no liability or obligation arising or accruing prior to the Closing Date, except as otherwise provided in the Purchase Agreement Documents.

17.    There shall be no rent accelerations, assignment fees, increases or any other fees charged or chargeable to the Purchaser as a result of the assumption, assignment and sale of the Assumed Contracts and Leases. Any provisions in any Assumed Contract or Lease that prohibit or condition the assignment of such contract or lease or allow the party to such contract or lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such contract or lease, constitute unenforceable anti-assignment provisions, and are void and of no force and effect. The validity of the assumption, assignment and sale of any Assumed Contract or Lease to the Purchaser shall not be affected by any dispute between any of the Debtors and any non-Debtor party to such contract or lease. Notwithstanding the foregoing, to the extent that any dispute s related to the assumption and assignment of the Assumed Contracts and Leases remain after the entry of this Order, the Purchaser shall, as set forth in the Purchase Agreement Documents, re tain its right to decide whether to have such contracts or leases assumed and assigned to it.

18. All executory contracts and unexpired leases that have been designated as Rejected Contracts and Leases shall be deemed rejected by the Debtors.

19. <u>DIP ABL Facility</u>. Upon the consummation of the Transactions pursuant to the terms of the Purchase Agreement Documents, the Purchaser shall pay to General Electric Capital Corporation (the "DIP Revolver Agent"), as administrative agent to the lender under the DIP ABL Facility (the "DIP Revolver Lender"), in full, all amounts owing by the Debtors to the DIP Revolver Lender under the DIP ABL Facility immediately prior to the Closing Date. Upon said occurrence, the Debtors shall be released from any and all Liabilities arising under or in connection with the DIP ABL Facility, and neither the DIP Revolver Agent nor any lender under the DIP ABL Facility will have any Claim against any Debtor in connection with the DIP ABL Facility.

20. <u>Use of Avoidance Action Proceeds</u>. For purposes of this Paragraph 20:

(a) The term "<u>Avoidance Action</u>" means any Action (and any related rights or demands) purchased by the Purchaser from the Debtors and their estates pursuant to Section 2.01(a) of the Purchase Agreement.

(b) The term "<u>Final Avoidance Action Order</u>" means, with respect to any Avoidance Action, an order or judgment entered by a court of competent jurisdiction presiding over such Avoidance Action: (i) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (A) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (B) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (ii) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (A) such

appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought and (B) the time to appeal further or seek certiorari, further review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay or rehearing is pending; <u>provided</u>, <u>however</u>, that no order or judgment will fail to be a "Final Avoidance Action Order" solely because of the possibility that a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order or judgment.

(c)     The term "<u>NetCashProceeds</u>" means any cash proceeds actually received from a defendant to an Avoidance Action pursuant to a Final Avoidance Action Order less all costs, charges, expenses and fees (including legal fees and fees of financial advisors or testifying experts) paid or required to be paid in connection with the prosecution and realization thereof.

21.     The Purchaser shall have complete and absolute discretion to pursue (or to not pursue) Avoidance Actions against any person or entity (including trade vendors, suppliers, employees or customers) with whom the Purchaser (or any of its affiliates that is engaged in substantially the same business that any of the Debtors is engaged in as of the date of this Order) continues to do business following the Closing (collectively, the "<u>BusinessRelated Avoidance Actions</u>"); <u>provided</u>, <u>however</u>, that the Debtors' estates shall be entitled to receive 50 percent of any Net Cash Proceeds resulting directly from Business Related Avoidance Actions commenced by the Purchaser, if any.

22.     Until the closure of the Cases or passage of the applicable statutes of limitations, the Creditors' Committee shall be permitted to request that the Purchaser pursue any Avoidance Actions other than the Business Related Avoidance Actions (the "Non-Business Related Avoidance Actions "), if the Purchaser has not commenced such actions within a reasonable time period following the Closing; provided , however , that if the Purchaser does not wish to directly pursue such actions, it shall transfer the right to pursue such actions to the Creditors' Committee to prosecute such actions directly.

23.     Any Net Cash Proceeds from any Non-Business Related Avoidance Actions shall be paid to the Debtors' estates, on the one hand, and the Purchaser, on the other hand, in alternating $2 million payments, with the Debtors' estates receiving the first $2 million, and the Purchaser receiving the second $2 million, until such time as each has received total payments of $6 million, after which any additional Net Cash Proceeds from any Non-Business Related Avoidance Actions shall each be shared equally between the Debtors' estates, on the one hand, and the Purchaser, on the other hand.

24.     Additional Provisions . The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreement Documents, including without limitation the Credit Bid (if any), shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and any state, territory, possession, or the District of Columbia.

25.     The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreement Documents is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

26.     Except as otherwise expressly provided in the Purchase Agreement Documents, the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to employees of the Debtors. Except as otherwise expressly provided in the Purchase Agreement Documents, the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which an y Debtor is a party and relating to the Business (including, without limitation, arising fr om or related to the rejection or other termination of any such agreement), and the Purchaser shall i n no way be deemed a party to or assignee of any such agreement, and no employee of the Purchase r shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and a ll claims arising from or relating to such agreement.

27.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Purchase Agreement Documents (a) shall constitute administrati ve expenses of the Debtors' estates under section 503(b) of the Bankruptcy Code and (b) shall be paid by t he Debtors in the time and manner provided for in the Purchase Agreement Documents wi thout further court order.

28.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments nece ssary and appropriate to consummate the Transactions.

29.     All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets or Parent Stock are hereby dire cted to

21

surrenderpossessionofsuchPurchasedAssetsorParentStocktothePurchaseronthe        Closing
Date.

30.    ExceptfortheAssumedLiabilitiesorasexpresslypermittedorotherwi       se
specificallyprovidedforinthePurchaseAgreementDocumentsorthisOrder,t       hePurchaser
shallhavenoliabilityorresponsibilityforanyliabilityorotherobligati       onoftheDebtorsarising
underorrelatedtothePurchasedAssets.Withoutlimitingthegeneralityof       theforegoing,and
exceptasotherwisespecificallyprovidedhereinandinthePurchaseAgreementD       ocuments,to
thefullestextentpermittedbylaw,thePurchasershallbereleasedfrom       liabilityforanyclaims
againsttheDebtorsoranyoftheirpredecessorsoraffiliates,andthePurc       hasershallhaveno
successororvicariousliabilitiesofanykindorcharacterincludingbutnotlim       itedtoanytheory
ofantitrust,environmental,successorortransfereeliability,laborlaw,de    _de facto_ merger,or
substantialcontinuity,whetherknownorunknownasoftheClosingDate,nowexistingor
hereafterarising,whetherfixedorcontingent,withrespecttotheDebtorsor       anyobligationsof
theDebtorsarisingpriortotheClosingDate,including,butnotlimitedto,liabilit       iesonaccount
ofanytaxesarising,accruing,orpayableunder,outof,inconnectionwith,orinanywa       y
relatingto,theoperationoftheBusiness,priortotheClosingDate.

31.    TheproceedsofthePurchasePrice,includingbutnotlimitedtothe
AdditionalConsideration,shallbesubjecttotheLiensecuringtheDebtors'obliga       tionsunderthe
SeniorSecuredNotes(excepttotheextentoftheCreditBid(ifany));provided_____,_however_,that
theAdditionalConsiderationshallbesubjectto,andwillbeusedinaccordancewiththet       erms
of,theSponsors'AdditionalConsiderationLienRelease.

32.    ThisCourtretainsjurisdictiontoenforceandimplementthetermsand
provisionsofthePurchaseAgreementDocuments,allamendmentstheretoandanywa       iversand

consentsthereunder,including,butnotlimitedto,retainingjurisdictionto(a)compel       deliveryof
thePurchasedAssetsorParentStocktothePurchaser,(b)compeldeliveryofthe       purchaseprice
orperformanceofotherobligationsowedtotheDebtors,(c)resolveanydisputes       arisingunder
orrelatedtothePurchaseAgreementDocuments,exceptasotherwiseprovidedthere       in,
(d)interpret,implement,andenforcetheprovisionsofthisOrderand(e)protectthe       Purchaser
against(i)anyoftheExcludedLiabilitiesor(ii)anyInterestsi       ntheDebtorsorthePurchased
Assetsofanykindnaturewhatsoever,assuchInterestswereinexistence       immediatelypriorto
theClosing(excepttotheextentsuchInterestswereexpresslyassumedunde       rthePurchase
AgreementDocuments).

33.     TheTransactionsareundertakenbythePurchaserandtheSponsorsin
"goodfaith,"assuchtermisusedinsection363(m)oftheBankruptcyCode,andaccordingl       y,
thereversalormodificationonappealoftheauthorizationprovidedhereintoconsummatet       he
SaleshallnotaffectthevalidityofthesaletothePurchaser(includingth       eassumptionand
assignmentofanyoftheAssumedContractsandLeases),unlesssuchauthoriza       tionisduly
stayedpendingsuchappeal.EachofthePurchaserandtheSponsorsisapurchaserin"       good
faith,"andisentitledtoalloftheprotectionsaffordedbysection363(m)oftheBa       nkruptcy
Code.

34.     ThetermsandprovisionsofthePurchaseAgreementDocumentsandthis
Ordershallbebindinginallrespectsupon,andshallinuretothebenefitof,theDebtors,t       heir
estates,andtheircreditors,thePurchaser,theSponsors,anditsandtheirrespect       iveaffiliates,
successorsandassigns.

35.     Thefailurespecificallytoincludeanyparticularprovisionsofany
PurchaseAgreementDocumentinthisOrdershallnotdiminishorimpairtheeffect       ivenessof

such provisions, it being the intent of the Court that the Purchase Agreement Documents be authorized and approved in their entirety.

36.   The Purchase Agreement Documents may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

37.   Following the Closing, the Purchaser shall satisfy all validly owing but unpaid amounts set forth on the Pre-Closing Budget (to the extent not paid prior to Closing), including the fees and expenses of the Debtors' professionals and the Committee's professionals, to the same extent it has agreed to satisfy such amounts pursuant to the Purchase Agreement, as if such amounts were included in the Post-Closing Budget (without duplication), as and when such amounts become due and payable.

38.   Within 7 Business Days following the Closing, the Purchaser shall pay to Rothschild Inc. ("RI") and Conway, Del Genio, Gries & Co. LLC ("CDG") the "success fees" and other fees and expenses payable to RI and CDG pursuant to Section 2.02(a)(ix) and (x) of the Purchase Agreement (the "Success and Other Fees"). Any Success and Other Fees payable will be subject to further order of the Court. If at a hearing to approve the payment of the Success and Other Fees, the Court allows an amount that is less than the amount paid by Purchaser, RI and CDG, as applicable, shall repay to Purchaser the amount that exceeds the Court's order, within five business days of entry of such order.

39.    As provided by Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for 10 days after the entry of the Order and shall be effective immediately upon entry.

**IT IS SO ORDERED.**

                                    ###