# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| In re: <br> MILACRON et al. <br> Debtors. [1] | Chapter 11 <br> Case No. 09-11235 (JVA) <br> Jointly Administered |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR APPROVAL OF SALE OF STOCK IN THE FACTORY POWER COMPANY PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "Milacron") hereby submit this application (the "Application") for entry of an order authorizing MI 2009 Inc., one of the above-captioned Debtors ("MI 2009" or the "Debtor") to sell its stock in The Factory Power Company, an Ohio corporation ("Factory Power") to UNOVA Industrial Automation Systems, Inc., a Delaware corporation (the "Buyer"), in accordance with sections 105(a) and 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: MI 2009 Inc. (f/k/a Milacron Inc.) (2125); CIP 2009 Inc. (f/k/a Cimcool Industrial Products, Inc.) (1002); MMC 2009 Inc. (f/k/a Milacron Marketing Company) (0580); MPTG 2009 Inc., (f/k/a Milacron Plastics Technology Group) (1007); EMD 2009 Inc. (f/k/a D-M-E Company Inc.) (3086); 1787230 Ontario Limited (f/k/a Milacron Canada Limited) (7230); and MCH 2009 B.V. (f/k/a Milacron Capital Holdings B.V.) (7203). The corporate headquarters address of these Debtors is: 4165 Half Acre Road, Batavia, Ohio 45103.

## JURISDICTION

1. This Court has jurisdiction over this Application under 28 U.S.C. § 1334. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1408 and 1409. The subject matter of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Bankruptcy Code sections 105 and 363 provide the statutory basis for the relief requested herein.

## BACKGROUND

3. The Debtors commenced these cases by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on March 10, 2009 (the "Petition Date"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their affairs as debtors in possession.

4. On March 16, 2009, the Official Committee of Unsecured Creditors was appointed (Doc. No. 111).

5. The Debtors were a major solutions provider to the plastics-processing industries and a leading supplier of premium industrial fluids to metalworking industries. Milacron delivered advanced technology and superior aftermarket service with a focus on the success of its customers worldwide. Milacron's plastics customer base was diversified with customers in industries as wide-ranging as automotive, consumer goods, housewares, building materials, packaging, medical, and electronics. Fluid customers included the automotive, industrial components and machinery, aerospace, appliances, HVAC, oil and primary metals, and off-road equipment industries.

6. The Debtors entered into a Restructuring Support Agreement ("RSA") with holders of approximately 78% (the "Initial Sponsors") of Milacron's 11-1/2% Senior Secured Notes (the "Senior Secured Notes", and the holders thereof, the "Noteholders"), in connection with a comprehensive financial restructuring of the Debtors. The proposed restructuring includes a debtor

2

in possession term loan facility by the Initial Sponsors and the holders of approximately 18% more of the Senior Secured Notes (the "DIP Term Loan Facility" and the lenders from time to time party thereto, the "DIP Term Loan Lenders") and contemplates that the DIP Term Loan Lenders would purchase substantially all of the Debtors' assets, subject to an auction process and the receipt of higher and better bids. The Initial Sponsors invited holders of Senior Secured Notes that were not Initial Sponsors to participate in the DIP Term Loan Facility on a pro rata basis. Several Noteholders accepted the invitation (such Noteholders, together with the Initial Sponsors, the "Sponsors"). Additionally, the Debtors received a debtor in possession asset-based revolving credit facility from General Electric Capital Corporation, which replaces the Debtors' prepetition asset-based financing facility.

7. Effective May 3, 2009, the Debtors entered into a purchase agreement (as amended, the "Purchase Agreement") with MI 363 Bid LLC ("MB LLC" or the "Purchaser"), an entity controlled by the Sponsors, whereby MB LLC would purchase substantially all of the Debtors' assets, subject to an auction process and the receipt of higher and better offers.

8. On June 30, 2009, the Court entered its Order (the "Sale Order") under 11 U.S.C. §§ 105(a), 363 and 365 and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure: (A) Approving the Purchase Agreement; and (B) Authorizing (I) the Sale of Substantially all of the Debtors' Assets and the Parent Stock Free and Clear of Liens, Claims and Encumbrances and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (Doc. No. 544) authorizing the Debtors to sell all or substantially all of the Debtors' assets to the Purchaser (the "Sale"). The Sale closed effective August 21, 2009.

9. While the Sale Order authorized the sale of substantially all of the Debtors' assets, certain assets were left behind and remained with the Debtors' estate. Among the assets left in the

3

estate was the Debtors' stock in Factory Power (the "Stock"). The Stock is currently held by the Debtor and several other entities, including the Buyer.

10. On August 18, 2009, the Order Authorizing the Debtors to Change Names (Doc. No. 716) was entered. The Debtors' new names are listed in footnote 1, along with the previous names held by each Debtor.

11. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings are contained in the Declaration of David E. Lawrence in Support of First Day Motions and Applications, filed March 10, 2009 (Doc. No. 34).

## THE PROPOSED SALE

12. Factory Power is a power plant established in 1908 by Milacron and certain of its neighboring manufacturing companies to provide electricity to their manufacturing facilities in Oakley, Ohio. The power plant has been decommissioned and no longer provides power for the neighboring manufacturing facilities.

13. The Debtor currently owns a minority share in Factory Power. While the Debtors have pursued all opportunities available to sell the Stock, they have determined, in their business judgment, that the offer set forth by the Buyer represents the highest and best offer available and therefore seek approval of the Sale. The Buyer is the largest shareholder of Factory Power.

## RELIEF REQUESTED

14. By this Motion, the Debtors seek the entry of an order approving the proposed sale of Stock to the Buyer pursuant to the terms of the Share Sale and Purchase Agreement, subject to any higher bids received by the Debtors prior to the hearing on this Motion. A draft of the proposed Share Sale and Purchase Agreement by and between the Debtors and the Buyer is attached hereto as

Exhibit A. The Debtors submit that for the reasons set forth herein, the Sale is in the best interests of the estates and meets the requirements of Bankruptcy Code sections 363 and 105.

## BASIS FOR RELIEF REQUESTED

15. Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Furthermore, under Bankruptcy Code section 105(a), "the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. In order to justify a sale out of the ordinary course of business, a debtor must generally articulate a business reason to support its entry into the sale. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). Section 363 does not require that the court substitute its business judgment for that of the debtor. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 680 (Bankr. S.D.N.Y. 1989). Rather, the court should ascertain whether the debtor has articulated a valid business justification for the proposed transaction. *See Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), cert. denied, 449 U.S. 869 (1980).

17. Courts have adopted a flexible case-by-case test to determine whether a debtor's proffered business purpose justifies the transaction under section 363(b). *See In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984).

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business…. Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-

vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

In re Walter, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988), citing In re Lionel Corporation, 722 F.2d 1063, 1070-71 (2nd Cir. 1983). A distillation of the factors considered reveals two fundamental questions to be addressed when a court assesses out of the ordinary course of transactions: (i) how the proposed transaction impacts the debtor's reorganization efforts and (ii) whether the transaction in the best interests of the creditors and equity holders. Id.

18. Several sound business reasons exist for selling the Stock to the Buyer at this time. As the Debtors have sold substantially all assets, they are no longer operating entities, no longer own land contiguous with the power plant, and have limited interest in holding passive investments. Further, they are no longer staffed appropriately to be an active participant in Factory Power. The Debtors' investment in Factory Power does not produce substantial returns such that continued ownership would provide a long term benefit to the estate or creditor interests. The Debtors believe this may be the best time, and opportunity, to sell this Stock, and continued holding of the Stock may result in a decrease in the value they are able to receive. Selling the Stock at this time will bring proceeds into the estate, while relieving the estate of any risks and burdens associated with continuing as a passive investor in Factory Power.

19. Additionally, the Debtors believe that the purchase price received is fair and reasonable in light of the circumstances. The Debtors have attempted to market their interests in Factory Power during these bankruptcy proceedings, including discussions with MB LLC, the purchaser of substantially all assets. With the exception of the Buyer, the Debtors have not had significant interest, and MB LLC elected to exclude the Stock from its bid. The Buyer submitted not

only the highest and best offer, but the only offer, and the Debtors believe the Share Sale and Purchase Agreement represents a fair and reasonable exchange of value.

20. Bankruptcy Code section 363(f) also authorizes the sale of the Stock free and clear of liens, claims, encumbrances and interests. Section 363(f) provides that a debtor may sell property free and clear of any lien, claim, encumbrance or interest in such property if:

   a. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
   b. such entity consents;
   c. such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
   d. such interest is in bona fide dispute; or
   e. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to approve the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (collectively, the "Interests"). See 11 U.S.C. § 363(f); Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

21. To the extent any liens or encumbrances exist on the Stock, the Debtors submit that the requirements of one of the subsections of Section 363(f) are met to permit a sale of the Stock free and clear of liens, claims, encumbrances or other interests. Any such interest will be adequately protected by attaching to the net proceeds of the sale, subject to any claims and defenses the Debtors might have under applicable law. Accordingly, the Court has ample grounds to approve the proposed sale under Bankruptcy Code Section 363(f).

## WAIVER OF REQUIREMENT TO FILE MEMORANDUM OF LAW

22. The Debtors submit that this Motion does not present any novel issues of law requiring briefing. Therefore, the Debtors request that the Court waive the requirement pursuant to Local Rule 9013-1(a) for a memorandum in support of this Motion.

## NOTICE

23. No trustee, or examiner has been appointed in these chapter 11 cases. By Motion filed concurrently herewith, the Debtors seek to limit service of this Motion to the Buyer and all parties-in-interest in accordance with the Administrative Order Establishing Certain Special Notice, Scheduling and Case Management Procedures Pursuant to Rules 2002 and 9007 of the Bankruptcy Rules (Docket No. 74) (the "Case Management Order"). In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

24. No previous motion for the relief sought therein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit B, authorizing the Debtors to sell the Factory Power Stock to the Buyer, and granting such other and further relief as is just and proper.

Dated: September 2, 2010  Respectfully submitted,
Cincinnati, Ohio

                                                  DINSMORE AND SHOHL, LLP

                                                  */s/ Patrick D. Burns*
                                                  Tim J. Robinson, Esq. (OH #0046668)
                                                  Kim Martin Lewis, Esq. (OH #0043533)
                                                  Patrick D. Burns, Esq. (OH #0081111)
                                                  1900 Chemed Center
                                                  255 East Fifth Street
                                                  Cincinnati, Ohio 45202
                                                  Telephone: 513-977-8200
                                                  Facsimile: 513-977-8141
                                                  tim.robinson@dinslaw.com
                                                  kim.lewis@dinslaw.com
                                                  patrick.burns@dinslaw.com

                                                  Counsel for the Debtor and
                                                   Debtor-in-Possession

**PROPOSEDORDER**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| In re: <br> MILACRON et al. <br> Debtors. [1] | Chapter 11 <br> Case No. 09-11235 (JVA) <br> Jointly Administered |

## ORDER APPROVING THE SALE OF STOCK IN THE FACTORY POWER COMPANY PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE

This matter having come before the Court upon the Motion of Debtors and Debtors in Possession For Approval of Sale of Stock in the Factory Power Company Pursuant to Sections 105(a) and 363 of the Bankruptcy Code (the "Motion") [Doc. No. __]; and the Court having considered the Motion and Exhibits attached thereto; and it appearing that due notice of the Motion has been given and that no further notice need be given; and the Court being fully advised in the premises and having concluded that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and all other parties in interest an represents a reasonable exercise of the Debtors' business judgment; and upon due deliberation and consideration of the food and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT:**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: MI 2009 Inc. (f/k/a Milacron Inc.) (2125); CIP 2009 Inc. (f/k/a Cimcool Industrial Products, Inc.) (1002); MMC 2009 Inc. (f/k/a Milacron Marketing Company) (0580); MPTG 2009 Inc., (f/k/a Milacron Plastics Technology Group) (1007); EMD 2009 Inc. (f/k/a D-M-E Company Inc.) (3086); 1787230 Ontario Limited (f/k/a Milacron Canada Limited) (7230); and MCH 2009 B.V. (f/k/a Milacron Capital Holdings B.V.) (7203). The corporate headquarters address of these Debtors is: 4165 Half Acre Road, Batavia, Ohio 45103.

1. The Motion is GRANTED.

2. The Debtors' execution, delivery and performance of the Share Sale and Purchase Agreement (the "Sale Agreement"), substantially in the format attached to the Motion, by and between the Debtors and UNOVA Industrial Automation Systems, Inc. (the "Buyer") is hereby authorized and approved.

3. The Buyer shall not be considered a successor entity or successor-in-interest to any liability of the Debtors except as may be specifically provided in the Sale Agreement.

4. The Debtors are authorized to sell the Stock, as described in the Motion, the Buyer. Such sale of Stock shall be free and clear of liens, claims and other interests, pursuant to section 363(f) of the Bankruptcy Code and in accordance with the terms of the Sale Agreement. All liens, claims or other interests against the Stock shall attach to the proceeds of the sale, if any, in the same order and priority as they may currently exist against the Stock.

5. The Buyer is a good faith purchaser for the purposes of Section 363(m) of the Bankruptcy Code.

6. Notice of the Motion, as described therein, shall be deemed adequate and appropriate under the circumstances and in full compliance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Southern District of Ohio.

7. The terms of this Order shall be binding upon the Debtors, their creditors, parties with any claims against the Debtor and other parties in interest, and any successors of such parties, including any trustee or examiner appointed in these cases or any subsequent or converted case of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

8. The Sale Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.

9. This Order shall be effective and enforceable immediately upon entry.

10. This Court shall retain jurisdiction over all matters relating to the interpretation or enforcement of the Sale Agreement and this Order.

**IT IS SO ORDERED.**

###